**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LYNWOOD WILLIAMS,

       Petitioner,

v.                                    Case No. 8:02-CV-965-T-30MAP

JAMES V. CROSBY, JR., et al.,

       Respondents.

_____/

### ORDER

This cause is before the Court on remand from the Eleventh Circuit Court of Appeals (Dkt. 27). Petitioner, a State of Florida inmate, initiated these proceedings *pro se* by filing a petition for habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 1996 conviction of first degree murder in the Thirteenth Judicial Circuit Court, Hillsborough County, Florida (Dkt. 1).  Finding the Petitioner's state petition for belated appeal had no tolling effect on the one-year limitations period applicable to § 2254 petitions, the Court dismissed Petitioner's § 2254 petition as time barred on September 2, 2005, *see* Dkt. 17, pursuant to 28 U.S.C. §2244(d).

Addressing the effect of Petitioner's untimely notice of appeal and petition for belated appeal of the state trial court's rejection of his Rule 3.850 motion, the Eleventh Circuit Court of Appeals concluded that because they were filed before the one-year limitations period for filing a § 2254 petition expired and the state appellate court treated his untimely notice of appeal as a continuation of his Rule 3.850 proceedings, the federal limitation period remained tolled. Based on this finding the case was remanded for consideration on the merits of Petitioner's claims.

The procedural history for this case is set out in this Court's order dismissing the petition. *See id.* Having considered the parties' arguments, applicable statutes, and controlling case law, the Court finds, for reasons set forth below, that Petitioner has not met the criteria for relief under § 2254.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996,  "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims.  *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented  in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision.  *See*

*Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.  Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof.

### Evidentiary Hearing

To be entitled to an evidentiary hearing on habeas claims, the petitioner must "allege facts that, if proved at the hearing, would entitle petitioner to relief." *Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted). For reasons discussed below, an evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a). *See Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim.").

### Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof.  Because a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of Petitioner's claims.  *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

Petitioner asserts seven claims for relief:

1.  [Petitioner] was denied his right to effective assistance of counsel because his trial counsel failed to make adequate contemporaneous objections to the prosecutor's improper and highly prejudicial statements during the State's closing argument;

2.   [Petitioner] was denied effective assistance of counsel when his trial attorney failed to investigate and present an involuntary intoxication defense;

3.   [Petitioner] was denied his right to effective assistance of counsel when his trial attorney failed to investigate and present witnesses who were beneficial to the defense of excusable homicide;

4.   [Petitioner] was denied effective assistance of counsel when his attorney failed to pursue plea negotiations for a plea of guilty to the lesser included charge of manslaughter;

5.   The cumulative effect of the trial attorney's numerous deficiencies severely prejudiced [Petitioner], thus depriving [him] of his Sixth Amendment right to effective assistance of counsel;

6.   The State failed to present evidence inconsistent with the reasonable hypothesis of innocence that [Petitioner] killed his wife in the heat of passion and without meditation; and

7.   Petitioner was denied a fair trial as a result of improper remarks of the prosecutor in closing arguments.

Dkt. 1.  Grounds One through Five were raised by Petitioner in his Rule 3.850 motion, and Grounds Six and Seven were raised in his brief on direct appeal.

**Ineffective Assistance of Counsel**

To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Because the ultimate

resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 835-37 (11th Cir. 2001).  State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, *see Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), a burden that Petitioner has failed to carry. *See* § 2254(e)(1) ("[A] determination of a factual issue made by a state court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

The trial court set forth the correct standard of review for an ineffective assistance of counsel claim (Dkt. 11, Ex. 017, Vol. I at R. 200).  Thus, to be entitled to relief under §2254, Petitioner must establish that the trial courts's application of the *Strickland* standard in reaching the determination that the claims raised in his Rule 3.850 motion lack merit was objectively unreasonable or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

**Grounds One and Seven**

In Ground One, Petitioner contends that trial counsel was ineffective in failing to make adequate contemporaneous objections to remarks made by the prosecutor during closing arguments. Petitioner challenges the prosecutor's comments as improper argument of impeachment matters as substantive evidence, improper bolstering of a State witness, and improper expressions of personal opinion.

Petitioner asserts in Ground Seven[1] that the allegedly improper comments referenced in Ground One denied him his right to a fair trial. Because these claims are closely related, they will be addressed together.

As stated above, Petitioner raised the ineffective assistance of counsel claim presented in Ground One in his Rule 3.850 motion. In rejecting the claim, the trial court found as follows:

> In his Motion and Memorandum of Law, Defendant alleges that he was denied effective assistance when defense counsel failed to object to the prosecutor's improper and prejudicial statements made during closing argument. The prosecutor, during closing argument, referred to matters not admitted into evidence. The Florida Supreme Court [sic] has ruled that it is error for the prosecution to refer to facts not in evidence during closing argument. *Aja v. State*, 658 So. 2d 1168 (Fla. 5th DCA 1995). However, error committed by the prosecution does not necessarily substantiate ineffectiveness on the part of defense counsel. *Knight v. State*, 394 So. 2d 997 (Fla. 1981). Furthermore, the failure on the part of defense counsel to move for a mistrial is not necessarily ineffective assistance because a mistrial might not be in the Defendant's best interest. *Anderson v. State*, 467 So. 2d 781, 787 (Fla. 3d DCA 1985).
>
> In order to substantiate a claim of ineffective assistance of counsel for not making objection during closing argument, the Court must determine if counsel's performance represented "a substantial and serious deficiency measurably below that of competent counsel." *Knight v. State*, 394 So. 2d 997, 1001 (Fla. 1981). Proper conduct of counsel falls within a wide range of reasonableness, and the defendant has the burden of proving that the action being challenged was ineffective rather than trial strategy. *Anderson v. State*, 467 So. 2d 781 (Fla. 3d DCA 1985). Unless there are special circumstances, defense counsel's failure to object to improper argument made by the prosecutor is not ineffective assistance of counsel. *Id.*

---

[1]Respondent argues that Ground Seven is procedurally barred because Petitioner failed to argue the federal dimension of his prosecutorial misconduct claims in state court. Having reviewed Petitioner's appellate briefs, this Court disagrees. While Petitioner did not state that he was relying on federal law to support his claim in his initial appellate brief, Petitioner did cite *Goddard v. State*, 143 Fla. 28 (1940), which relied on the holding in *Berger v. State*, 295 U.S. 78 (1935) (reviewing claims of prosecutorial misconduct). As clarified recently in *Baldwin v. Reese*, a decision focusing upon the requirement that a petitioner for federal habeas relief "fairly present" his claims in state court, the United States Supreme Court held that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds." 541 U.S. 27, 32 (2004).

Defendant admitted that he stabbed his former wife numerous times causing her death.  Even if counsel's performance was ruled deficient, Defendant's Motion fails to show how the prosecutor's remarks during closing prejudiced the decision.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The Motion only generically states that the result "would have been different."  (Memorandum of Law p. 21).

Furthermore, Defendant's counsel did request on appeal a review of the trial court's failure to declare a mistrial during closing arguments.  (*See* Judicial Acts to Be Reviewed).  Therefore, Defendant's Motion is denied as to ground one.

Dkt. 11, Ex. 17, Vol. I at R. 200-02.

Petitioner's claim of prosecutorial misconduct presented in Ground Seven was presented to and rejected by the state district court on direct appeal. *See Williams v. State*, 701 So. 2d 878 (Fla. 2d DCA 1997). Although the state district court denied relief without entering a written opinion, in this circuit, a "state court's summary, which is to say unexplicated, rejection of the federal constitutional issue qualifies as an adjudication under § 2254(d) so that it is entitled to deference." *Isaacs v. Head*, 300 F.3d 1232, 1259 (11th Cir. 2002) (citing *Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002)).

The first step in analyzing Grounds One and Seven is to determine if the prosecutor's argument was improper because no matter how outcome-determinative it is, "a proper argument cannot render the proceedings fundamentally unfair and therefore cannot be the basis for a constitutional violation." *Romaine v. Head*, 253 F.3d 1349, 1366 (11th Cir. 2001) (citing *Brooks v. Kemp*, 762 F.2d 1383, 1403 (11th Cir. 1985) (en banc) ("A permissible argument, no matter how 'prejudicial' or 'persuasive,' can never be unconstitutional.")).

In Florida courts, wide latitude is permitted in addressing a jury during closing argument. *Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982); *Thomas v. State*, 326 So. 2d 413 (Fla. 1975). Logical inferences may be drawn and legitimate arguments advanced by prosecutors within the limits of their forensic talents to effectuate law enforcement. *Spencer v. State*, 133 So. 2d 729 (Fla. 1961).  Moreover, in order for the prosecutor's comments to merit a new trial under Florida law, the comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.  *Spencer v. State*, 645 So.2d 377 (Fla. 1994).

In considering a claim that the prosecutor's comments to the jury during closing argument violated the petitioner's right to a fair trial, federal habeas corpus review is "the narrow one of due process, and not the broad exercise of supervisory power." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974); *Romaine v. Head*, 253 F.3d at 1365-66. Federal case law regarding closing argument is the same as Florida law, *see, e.g., Darden v. Wainwright*, 477 U.S. 168, 179-183 (1986) (quoting *Donnelly*, 416 U.S. at 643). It is not enough that a prosecutor's comments were undesirable or even universally condemned. *Cobb v. Wainwright*, 609 F. 2d 754 (5th Cir. 1980).[2] To amount to a constitutional violation, the prosecutor's remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 at 644. In making this assessment, the reviewing court must consider the allegedly improper comments in the

---

[2]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

context of both the prosecutor's entire closing argument and the trial as a whole. *Branch v. Estelle*, 631 F. 2d 1229, 1233 (5th Cir. 1980).

Closing argument is intended to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). While a prosecutor may not go beyond the evidence before the jury, he is not limited to a bare recitation of the facts; he may "comment" on the evidence, *id.*, and "state his contention as to the conclusions the jury should draw from the evidence." *United States v. Johns*, 734 F.2d 657, 663 (11th Cir.1984).

The theory of Petitioner's defense was that he killed the victim in the heat of passion. During opening statements, trial counsel set out Petitioner's history with the victim.  The record reflects that during the first five years of their relationship, Petitioner was married to another woman. Despite her on-going affair with Petitioner, the victim married Ferris Coleman. Mr. Coleman fathered the first child born during his marriage to the victim.

According to Petitioner, when the victim discovered that she was pregnant with a second child, she informed Petitioner that she knew he was the child's father because she and Mr. Coleman were no longer sexually intimate. Petitioner left his first wife and their child and began cohabiting with the victim and her children. Because the victim's marriage to Mr. Coleman was not yet been dissolved when the second child was born, Mr. Coleman was identified as the child's father on the birth record, and the child was named Byron Coleman. Mr. Coleman paid child support for Byron after he and the victim were divorced.

When the offense of conviction occurred, Petitioner was receiving disability payments from TECO. He was scheduled for a hearing regarding his application for social security disability the following week. According to Petitioner, he and the victim had been

drinking whiskey and using cocaine that night. Petitioner told the victim that he wanted to change Byron's name from Coleman to Williams so Byron would also qualify to receive a check as a result of Petitioner's disability. When pressed by Petitioner to agree to changing Byron's name, the victim told Petitioner that she had lied to him – Byron was not his son. Hearing the victim say that he did not father the child that he believed for sixteen years was his son proved too much for Petitioner -- he became "very angry" and began advancing toward the victim. Their argument became more virulent  as the distance between Petitioner and the victim narrowed.

Trapped between the bed and the wall, the victim began striking Petitioner repeatedly on the chest with something Petitioner later identified as a knife.  Petitioner wrestled the knife away from the victim and used it to stab her (Dkt. 29, Ex. 8, Vol. V at Tr. 490, 495).[3]  Petitioner inflicted 30 wounds to the victim's upper body, one of which was a slit in her throat that penetrated the windpipe.

Petitioner testified that he recalled taking the knife from the victim and stabbing her twice, but he had no further recall of the incident until he "come out of a daze when [he and the victim] fell" to the floor. As she lay on the floor bleeding to death, Petitioner attempted to kill himself by ingesting sleeping pills rather than summoning help for the victim (Dkt. 29, Ex. 8, Vol. V at Tr. 497).  The suicide attempt failed, and when he awoke at around 10:00 a.m., Petitioner called a friend and asked him to call an ambulance, stating that he and the victim "might be hurt" (Dkt. 29, Ex. 8, Vol. III at Tr. 234-35).

---

[3]The investigators found two knives in the bedroom.  Petitioner was found on floor on the left side of the bed with a small knife covered in blood laying between him and the bed. The second knife, found at the foot of the bed, had blood on the blade and the medical examiner determined that the serrated blade matched a wound on the victim's throat.

On direct examination, Petitioner testified that he married the victim in 1989 and filed for divorce in 1992. Petitioner further testified that he and the victim continued to live together as man and wife until she moved into an apartment in March 1994.  Despite their separate residences, Petitioner and the victim continued their intimate relationship, with the victim staying overnight with Petitioner at his house three to four times per week.  It was during one of these visits that Petitioner stabbed the victim to death (Dkt. 29, Ex. 8, Vol. V at Tr. 490). On cross-examination, the following exchange occurred:

Prosecutor:   The divorce from Mildred was your idea?

Petitioner:   Yes.

Prosecutor:   You're the one that filed the petition for that divorce?

Petitioner:   Yes, I did.

Prosecutor:   When you filed that petition for divorce, you had to say that the marriage was irretrievably broken.  Correct?

Petitioner:   Yes.

Prosecutor:   And also, when you filed that petition for divorce, you indicated that there were no children born of this marriage between the parties; [sic] didn't you?

Petitioner:   Yes, I did.

Prosecutor:   Nothing had to be – nothing was done regarding any child visitation or nothing [sic]?

Petitioner:   No it wasn't because the child wasn't in my name.

Prosecutor:   Okay.  And Mildred signed papers for the divorce?

Petitioner:   Yes, she did.

.  .  .  .  .

Prosecutor    You indicated also that Byron, or B.J.'s, last name was Coleman, and that was because he was born when Mildred was still married to Ferris Coleman?

Petitioner:    Yes.

Prosecutor    And you were aware that Ferris Coleman was paying child support for B.J. still?

Petitioner:    Not really.  She told me he was paying for – but it was a while before I even knew he was paying for Eric, because I always took care of him.  Okay?  And she told me that he was paying for Eric.  I didn't know that he was paying it for B.J. too until later on.

Dkt. 29, Ex. 8, Vol. V at Tr. 492-93; 498-99.

The divorce file was not admitted into evidence. During closing argument, the prosecutor argued that Petitioner could not claim that he was surprised at the victim's statement that Byron was not his son since Byron was conceived and born while the victim was married to Mr. Coleman.  The prosecutor continued his attack on Petitioner's heat of passion defense, stating that:

[Y]ou know, this is definitely not the first time the defendant has heard this or has known better, because we know in 1992 when he filed for divorce, when he petitioned for the divorce, he filed a sworn petition saying that there were no children with him and Mildred, based on his cross examination.  And then he tells you, "this was the first time I ever heard it."  Its not the truth.  Sorry Mr. Williams.  We got the divorce file.

Dkt. 29, Ex. 8, Vol. VI at Tr. 565.

In both federal and Florida courts, prosecutors may comment on the evidence and reasonable inferences drawn therefrom. Here, the phrase "'born of the marriage" could be viewed as a term of art and by employment of such, Petitioner was claiming that he had no child by Mildred, particularly so where there was no testimony that Petitioner had clarified or otherwise indicated in the divorce petition that there was a child born out of wedlock.

Given Petitioner's testimony that there was no provision for child support when he divorced the victim because "the child was not in [his] name," the prosecutor was entitled to draw the logical inference from omission of provision for the son that Petitioner was not claiming that Byron was his son. The prosecutor's remarks were proper comments on the evidence.

Finally, trial counsel opened the door for this line of questioning during Petitioner's direct examination. While the prosecutor's paraphrase of Petitioner's testimony may have been inartful,[4] this Court cannot say that when looking at the entire trial record, this comment was of such a nature as to destroy the fairness of the proceeding.

The Court determines that, likewise, when taken in context, other comments by the prosecutor about which Petitioner complains did not go beyond the evidence or misstate the law or the facts regarding the evidence.

The prosecutor commented on Petitioner's wounds, referring to them as "superficial" and "self-inflicted" (Dkt. 29, Ex. 8, Vol. VI at Tr. 532).  Petitioner characterizes this as a misstatement of the evidence and an expression of the prosecutor's personal beliefs. *Id*. The record reflects that there was medical testimony that Petitioner's wounds were left open and dressed with gauze pads rather than stitched closed. *Id*. The prosecutor further adduced testimony that Petitioner's wounds were superficial and unusual in the manner in which they were inflicted. The medical testimony established that  Petitioner suffered "an unusual kind of group, cluster, of stab wounds," with the doctor opining that it was "unusual to have that many wounds in one small area." *Id.*, Vol. IV at 460. The State also presented the testimony of Officer Scudder that Petitioner admitted stabbing himself. In his closing,

---

[4]Notably, when queried during the Rule 3.850 hearing regarding the prosecutor's reference, without objection,  to the divorce petition during closing argument, trial counsel responded: "[T]hat's his interpretation of that one question he asked [Petitioner] on cross examination" (Dkt. 11, Ex. 17, Vol. I at R. 282).

the prosecutor directed the jury's attention to medical testimony that the cluster of wounds on Petitioner's chest was unusual, noting that this contradicted Petitioner's testimony that the wounds were inflicted by the victim when she repeatedly struck him in the chest with the knife while backing away from him. The prosecutor's reference to Petitioner's wounds was merely a comment on the evidence presented during its case in chief.

Petitioner also objects to the prosecutor's comments regarding Wanda Ghent, one of Petitioner's neighbors interviewed by Detective Randy Bell the day that the victim's body was discovered. When called as a defense witness, Ms. Ghent testified that approximately one month before the victim's death, Petitioner "told [her] how much he loved his family and that he wanted his wife and two boys back" (Dkt. 29, Ex. 8, Vol. IV at Tr. 437). She denied, however, telling Detective Bell that Petitioner told her that he had learned from a private investigator he hired to follow the victim that she had been seeing another man. Ms. Ghent further denied telling Detective Bell that Petitioner told her that "he would rather see the victim dead than to be with anybody else." *Id.* at Tr. 441-442.

After the defense rested, the State called Detective Bell as a rebuttal witness. Detective Bell testified that when he interviewed Ms. Ghent shortly after the murder, she stated that Petitioner had told her that he was concerned that the victim was seeing another man, stating, "If I can't have her, no one can." Detective Bell also testified that during the interview Ms. Ghent stated that Petitioner said, "If I kill her I'll kill myself."

During closing argument, trial counsel argued: "Why didn't [the prosecutor] call Wanda Ghent if she was such a big help?" In rebuttal, the prosecutor stated: "Folks, I didn't call her because, you know what, folks, she is lying.  How would you feel about the fact if I called somebody to the stand who didn't tell the truth?" Dkt. 29, Ex.8, Vol. VI at Tr. 552.

Relying on the decision in *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987), Respondent argues that this comment was not improper given trial counsel's attempt to impugn the testimony of Detective Bell. In *Craig*, the Florida Supreme Court concluded that argument characterizing a defendant as a liar was within the bounds of proper argument, stating:

> Appellant argues that the prosecutor improperly-made repeated references to defendant's testimony as being untruthful and to the defendant himself as a "liar. " It may be true that the prosecutor used language that was somewhat intemperate but we do not believe he exceeded the bounds of proper argument in view of the evidence. When counsel refers to a witness or a defendant as being a "liar," and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence. It was for the jury to decide what evidence and testimony was worthy of belief and the prosecutor was merely submitting his view of the evidence to them for consideration. There was no impropriety.

*Id.* at 865.   The prosecutor's argument was, again, merely a comment on testimony presented during the trial and inferences that the jury might draw therefrom.

Petitioner's claim that the prosecutor attempted to bolster Detective Bell's testimony also lacks merit.  During his rebuttal argument, the prosecutor argued that while police reports are not admissible as evidence, Detective Bell's use of his police report to refresh his memory prior to testifying on rebuttal was proper. The prosecutor stated that unlike Ms. Ghent's testimony, which contradicted her oral statement to Detective Bell, the police report upon which he relied to refresh his memory could not be changed (Dkt. 29, Ex.8, Vol. VI at Tr. 554). The Court finds Petitioner argument that this was an attempt to bolster Detective Bell's credibility and persuade the jury that his testimony should be believed simply because he was a police officer unpersuasive (Dkt. 2 at 10).

The jury heard Ms. Ghent testify that she did not make the statements attributed to her by Detective Bell in his report. The jury also heard Detective Bell testify that he interviewed Ms. Ghent at the murder scene and based on his recollection, refreshed by a review of his report of the interview, Ms. Ghent's testimony contradicted her oral statement to him. Trial counsel opened the door for the rebuttal testimony, and the prosecutor's comment regarding Detective Bell's testimony about Ms. Ghent's out-of-court statement in rebuttal of her in-court testimony, previously memorialized in his written report of the interview, was not such that it prejudicially affected Petitioner's substantial rights. *See Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995).

Finally, it is not improper for the prosecutor to attempt to rebut the defense's attempts to impeach the credibility of a State's witness. *See Davis v. Singletary*, 853 F.Supp. 1492, 1560 (M.D. Fla. 1994), *aff'd,* 119 F.3d 1471 (1997)*, cert. denied*, 523 U.S. 1141 (1998) (finding that "[i]n response to an attack on the government and the conduct of its case, a prosecutor may present what even amounts to a bolstering argument if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon the government or its witnesses.") (citation omitted).

Petitioner also contends that comments made by the prosecutor during his rebuttal was an improper expression of his personal opinion. During closing argument, trial counsel submitted to the jury that when referring to Petitioner's heat of passion defense, the prosecutor had used the term "excuse" with disgust (Dkt. 29, Ex. 8, Vol. VI at Tr. 533). Trial counsel further argued that the victim wove a "web of deceit" and asserted that she, in fact, instigated the attack which culminated in her death. *Id.* at Tr. 534; 537. On rebuttal, the prosecutor countered with the following:

The first thing [trial counsel] said is how disgusted I seemed by using the word "excuse." Well, excuse me. I mean, excuse me, but folks, it is disgusting to suggest that there's an excuse for this. That is disgusting. I mean to do this to another human being who is fighting for their life and say that there are some words that justify it. That is disgusting. You know, and then we have to come into this courtroom and listen to the defense suggest to you that the reason [the victim] is dead is her fault. And then we have to come in here and listen to the defense tell you how deceitful she is.  While that woman lays in her grave with 30 wounds in her body, 28 of them being stab wounds from that knife, we've got to come in here and listen to that.  That is disgusting. Yes.

Dkt. 29, Ex. 8, Vol. VI at Tr. 549.

First, this Court concludes that the prosecutor's comments were an invited response to trial counsel's assessment of the prosecutor's attitude toward the defense of excusable homicide. Second, the prosecutor's comments were directed to the theory of Petitioner's defense that he killed the victim in the heat of passion ignited by her admission that, notwithstanding her statements to the contrary over the past sixteen years, Byron was not Petitioner's son. The prosecutor's remarks, taken in context, constitute a comment on the theory of the defense in relation to the evidence rather than an expression of his personal opinion or a  personal attack on trial counsel.

Petitioner bears the burden of establishing that the rejection of his claims in state court is contrary to or an unreasonable application of federal law or an unreasonable application of the law to the facts. See 28 U.S.C. § 2254(d). *See also Romine*, 253 F.3d at 1357. He has not carried this burden. When taken in context in light of evidence presented during the trial Petitioner's interpretation of the prosecutor's remarks is not the most natural one – which may explain why trial counsel failed to object at the time.

As discussed *supra*, the state district court rejected Petitioner's argument on direct appeal that the prosecutor's comments were improper.  In addressing Petitioner's assertion

that trial counsel was ineffective for failing to object to the prosecutor's allegedly improper comments, the trial court found that "[e]ven if counsel's performance was ruled deficient, Petitioner . . . failed to show how the prosecutor's remarks during closing prejudiced the decision." Dkt. 11, Ex. 17, Vol. I at R. 202. Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002); *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Here, Petitioner fails to demonstrate that the prosecutor's comments were improper, much less that he was prejudiced thereby.

This Court finds that the prosecutor's comments during closing argument regarding inconsistencies in the evidence did not burden Petitioner's exercise of his constitutional rights or violate due process. While prosecutors must guard against remarks that could unduly burden a defendant's exercise of constitutional rights, courts must evaluate prosecutorial remarks within the specific context within which they arise, and not presume that a prosecutor intends – or that a jury will comprehend – an oblique but inappropriate interpretation, rather than a more direct, lawful one. *See DeChristoforo*, 416 U.S. at 647 ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.").

The Court concludes that Petitioner has not established that the state courts' rejection of Grounds One and Seven resulted in a decision that is contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or that the decisions were based on an unreasonable

determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner is not, therefore, entitled to federal habeas relief on Grounds One and Seven.

**Grounds Two, Three, and Five**

Grounds Two, Three, and Five were raised by Petitioner in his Rule 3.850 motion. When Petitioner appealed the denial of his Rule 3.850 motion, he failed to raise these three claims.   Respondent asserts, therefore, that because the claims were abandoned on appeal, they are not cognizable under § 2254.   See 28 U.S.C. § 2254(b). *See also Simmons v. State*, 934 So. 2d 1100, 1111 n.12 (Fla. 2006) (finding petitioner's claim that the prosecutor made improper remarks concerning the DNA evidence on petitioner's car seat was waived because the issue was not properly briefed); *Coolen v. State*, 696 So. 2d 738, 742 n. 2 (Fla. 1997) (stating that a failure to fully brief and argue points on appeal "constitutes a waiver of these claims"). In *Duest v. Dugger*, the Florida Supreme Court emphasized that "merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived." 555 So. 2d 849, 852 (Fla. 1990).

In  *Bell v. Cone*, the United States Supreme Court held that "as a general matter, the burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits." 543 U.S. 447, 451 n.3 (2005). The Court finds that Petitioner has failed to satisfy the requirement that he give the state court an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (citation omitted). *See also*  28 U.S.C. § 2254(b); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982) ("The state appellate courts [must have] a chance to mend their own fences and avoid federal intrusion.").

Exhaustion of the federal dimension of a state prisoner's habeas claim is a statutory requirement that the State did not expressly waive in this case. See 28 U.S.C. 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). *See also McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that the district court erred in finding that because the state failed to argue the procedural bar, the bar was waived and proceeded to consider the merits of the petitioner's claim). Because Petitioner abandoned these claims on appeal, they are now procedurally barred from review in state court. *See State v. Mitchell*, 719 So. 2d 1245, 1247 (Fla. 1st DCA 1997), *rev. denied*, 729 So. 2d 393 (Fla. 1999).

A petitioner's claims or portions of claims that are not exhausted but would clearly be barred if returned to state court must be dismissed. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)*; Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here, it would be futile to dismiss the case to give Petitioner the opportunity to exhaust his claims because they could have and should have been raised on appeal during the Rule 3.850 proceedings. *See* Fla. R. Crim. P. 3.850(c).[5] Because Petitioner did not present his claims to the highest state court, they have not been properly exhausted and are now procedurally barred at the state level.

A federal court may still review the merits of Petitioner's claims despite the procedural bar if he can show both "cause for the default and prejudice attributable thereto" or that  failure to address the claims on the merits would lead to a fundamental miscarriage

---

[5]Under Fla. R. Crim. P. 3.850(c), "grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal" are procedurally barred from collateral review.

of justice, often referred to as the "actual innocence" exception, *see Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause must ordinarily be something external to the petitioner. *Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir. 1995). To show prejudice, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152 (1982).

In the reply, counsel states on Petitioner's behalf as follows:

> It is respectfully submitted that the failure to raise the claims in Issues Two, Three and Five at the State appellate level was a strategic decision on the part of the undersigned.  The undersigned handled [Petitioner's] appeal from the denial of his State motion for post conviction relief.  After having reviewed [Petitioner's] case, it was the undersigned's opinion that the appellate court would not grant [Petitioner] relief on appeal in regard to the claims presented in Issues Two, Three and Five of [Petitioner's] Petition based upon the way the lower court structured its order denying relief.  As such, [Petitioner's] appeal from the denial of his State Post Conviction Motion only dealt with the claims presented in Issues One and Four of [Petitioner's] 2254 Petition.  It was felt that focusing on the claims from Issues One and Four was more likely to garner success at the State level and counsel did not wish to detract from his argument by inserting an argument that he did not believe the appellate court would grant relief on.  As such, it is respectfully submitted that [Petitioner] has demonstrated cause for his failure to exhaust his state remedies in regard to Issues Two, Three and Five of his 2254 petition.

Dkt. 12 at 4-5.  Counsel's attempt to salvage these claims is unpersuasive.[6]

Counsel cites a Seventh Circuit case in support of his assertion that Petitioner has demonstrated prejudice, arguing, contrary to his assessment of the claims in state court, that the petition does "present meritorious claims." *See Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992). Even if *Freeman* were controlling precedent in this circuit, it is

---

[6]Where, as here, "ineffectiveness is a question which [the court] must decide, admissions of deficient performance by attorneys are not decisive." *Harris v. Dugger*, 874 F.2d 756, 761 n.4 (11th Cir.), *cert. denied*, 493 U.S. 1011 (1989).  *See also Breedlove v. State*, 692 So. 2d 874 (Fla. 1997) (finding that an attorney's own admission of ineffectiveness has little persuasive authority).

distinguishable. *Freeman* held that the petitioner satisfied the cause and prejudice test where he demonstrated that appellate counsel's failure to raise a Fifth Amendment violation on *direct appeal* constituted ineffective assistance of counsel. *Id.* While a properly exhausted meritorious ineffective assistance of counsel on direct appeal may satisfy the cause exception to a procedural bar, *see Murray v. Carrier*, 477 U.S. 478, 489 (1986); *United States v. Nyhuis*, 211 F3d 1340, 1344 (11th Cir. 2000) (citing *Greene v. United States*, 880 F.2d 1299, 1305(11th Cir.1989)), here, counsel's "deficient performance" occurred during the post-conviction stage of Petitioner's state proceedings. The argument that post-conviction counsel's ineffectiveness constitutes cause for the failure to exhaust these claims in state court is foreclosed by a recent decision by the Eleventh Circuit holding that since the "[Petitioner] did not have a constitutional right to post-conviction counsel[,] . . . he cannot establish a constitutionally deficient performance under *Strickland* that would be necessary to prove cause and prejudice to overcome the procedural bar to federal review." *Jimenez v. Fla. Dep't of Corrs.*, 2007 WL 866226 (Mar. 23, 2007).

Petitioner fails to offer any other reason for his abandonment of these claims, and the Court discerns none that would amount to good cause to overcome a state procedural default. Having failed to allege, much less show, that any factors external to the defense prevented the presentation of the claims, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier,* 477 U.S. 478 (1986); *Wainwright v. Sykes*, 433 U.S. at 90.

The exception to the "cause-and-prejudice" requirement recognized in *Sykes* providing that the standard developed therein would not bar habeas relief for a victim of a "miscarriage of justice" is also unavailing to Petitioner's cause. *See id.* at 90. A petitioner in a collateral proceeding who wishes to establish his actual innocence to avoid a

procedural bar to consideration of the merits of his underlying claim must demonstrate that "a *constitutional* violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327 (1995) (emphasis added).  This gateway applies only if the petitioner can demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell,* __ U.S. __, 126 S.Ct. 2064, 2076-77 (2006); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. at 327-28).

In this context, Petitioner must show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Id*; *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). *See also Schlup v. Delo*, 513 U.S. at 324.  Petitioner does not assert that he has "new" reliable evidence of factual innocence and there is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of his claims. *See  Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of Grounds Two, Three, and Five. *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

**Ground Four**

In Ground Four, Petitioner asserts that trial counsel was ineffective in failing to pursue plea negotiations with the State.  Petitioner contends that the State's willingness to accept a plea to manslaughter was evidenced by the State's preparation of a guidelines

score sheet for the offense of manslaughter presented to trial counsel on the morning the

trial commenced (Dkt. 2 at 32).

This claim was raised by Petitioner in his Rule 3.850 motion and the appeal thereof.

In rejecting the claim, the trial court found as follows:

> In his motion, Defendant alleges that trial counsel failed to pursue plea
> negotiations that could have resulted in a sentence substantially less than the
> life sentence he received. In some situations, the failure of trial counsel to
> effectively communicate the facts and merits of a plea bargain offered by the
> state may warrant relief. *Young v. State*, 608 So. 2d 111, 112 (Fla. 5th DCA
> 1992). The defendant has the burden of proving that his counsel failed to
> communicate a plea offer or misinformed him of the penalty he faced, that if
> he had been advised correctly he would have accepted the plea offer, and
> that such acceptance would have resulted in a lesser sentence. *Id.* at 113.
> After trial, a defendant has nothing to lose by alleging that he was not
> properly advised of a plea that was offered. *Id.* at 112.
>
> In the instant case, Defendant also has nothing to lose by alleging that a plea
> bargain was not properly communicated. Furthermore, he has not met the
> burden of proof. Defendant's Memorandum claims that a sentencing
> guidelines scoresheet for manslaughter was prepared, but there is no such
> document in the court file, and Defendant has not produced this alleged
> document. (*See* Defendant's Memorandum of Law, p. 32). Therefore, the
> Defendant's Motion is denied as to ground four.

Dkt. 11, Ex. 17, Vol. I at R. 204-05. The record supports the trial court's findings.

Citing *Boria v. Keene*, 99 F.3d 492 (2d Cir. 1996), *clarified on reh'g*, 90 F.3d 36 (2d

Cir. 1996), as support for this claim, Petitioner contends that trial counsel was ineffective

in failing to properly represent him in the plea context by advocating a plea of guilty to the

lesser included charge of manslaughter. *Boria* does not support Petitioner's claim.  In that

case, the defendant rejected a plea offer that would limit his sentence to three years, went

to trial, and was ultimately sentenced to a term of 20 years to life.  Defense counsel never

provided Boria advice on whether to accept or reject the offer.  The *Boria* court held that

counsel has a duty to advise his client when his "best interests clearly require that a

*proffered* plea bargain be accepted." *Id.* at 496 (emphasis added). In *Purdy v. United States*, 208 F.3d 41, 46 (2d Cir. 2000), the Second Circuit relied on the fact-specific nature of the *Strickland*[7] inquiry in limiting its holding in *Boria* to the facts of that case. Here, Petitioner has not established that a plea offer, formal or informal, was made by the State.

"[T]here is no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). *See also United States v. Palmer*, 809 F.2d 1504, 1508(11th Cir. 1987) ("The government was under no obligation to enter into any plea bargaining or to accept any deal offered by Palmer"). To the extent that Petitioner is attempting to argue that counsel was ineffective in failing to pursue a plea bargain, he must show that the prosecutor would have offered a plea, that the court would have approved it, and that he would have accepted it. *Jewson v. Crosby*, 1005 WL 1684209, at * (N.D. Fla. 2005) (petitioner could not prove prejudice because the evidence showed that the state had made no plea offers or exhibited any inclination to plea bargain) (citing *McClenithan v. Dugger,* 767 F.Supp. 257, 258 (M.D. Fla.1991)); *Zamora v. Wainwright,* 637 F.Supp. 439, 443 (S.D. Fla. 1986).

Petitioner has failed to come forth with objective evidence to show that but for his counsel's errors he would have accepted a plea offer. *Diaz v. United States,* 930 F.2d 832, 835 (11th Cir. 1991); *Toro v. Fairman,* 940 F.2d 1065, 1068 (7th Cir. 1991). Under Florida's criminal rules, counsel is not required to engage in plea negotiations. *See* Fla. R. Crim. P. 3.171(c)(2) (counsel must convey any offer made by the prosecution and advise the

---

[7]*Strickland v. Washington*, 466 U.S. at 688-90 (the "performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances," that a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case," and that there are countless ways to provide effective assistance in any given case").

defendant on possible alternatives.). Here, as in his Rule 3.850 proceedings, Petitioner has failed to establish that the State evidenced its amenability to entering into plea negotiations by preparing a guidelines score sheet for manslaughter. Trial counsel could not communicate to Petitioner an offer that did not exist, nor could he force the State to enter into plea negotiations. Petitioner is not entitled to relief on this ground.

**Ground Six**

Next, Petitioner asserts that the State "failed to present evidence inconsistent with the reasonable hypothesis of innocence that [Petitioner] killed his wife in the heat of passion and without meditation." This sufficiency of the evidence claim was presented to and rejected by the state district court on direct appeal. *See Williams v. State*, 701 So. 2d 878 (Fla. 2d DCA 1997). Thus, as discussed above, the Court is precluded from granting Petitioner federal habeas relief on this claim unless one of the statutory exceptions set out in §2254(d) is applicable. *See Isaacs v. Head*, 300 F.3d at 1259.

To satisfy the constitutional requirement of due process in a criminal trial, the state must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant. *In re Winship*, 397 U.S. 358, 364 (1970). When considering the sufficiency of the evidence on review, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt but "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted); *see also United States v. Thomas*, 987 F.2d 697 (11th Cir. 1993); *Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990). "[T]he *Jackson* standard of review is `[e]qually

applicable to direct or circumstantial evidence.'" *Martin v. State of Alabama*, 730 F.2d 721, 725 (11th Cir. 1984) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1358 (11th Cir. 1982)). Moreover, the Court will not reweigh the evidence or consider the credibility of witnesses. *Jackson*, 443 U.S. at 316.

The Eleventh Circuit has stated:

> The federal courts have consistently reiterated that this standard for weighing the constitutional sufficiency of the evidence is a limited one. It is not required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt. Faced with a record of historical facts that supports conflicting inferences, we must presume that the jury resolved such conflicts in favor of the prosecution, deferring to the credibility of the evidence. The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief.

*Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir.) (footnote and citations omitted), *cert. denied*, 484 U.S. 925 (1987); *Heath v. Jones,* 863 F.2d 815, 819-20 (11th Cir. 1989) (*per curiam*).

Where the evidence against the defendant is circumstantial, the Florida Supreme Court has set the following standard:

> [I]f the state does not offer evidence which is inconsistent with the defendant's hypothesis, "the evidence [would be] such that no view which the jury may lawfully take of it favorable to the [state] can be sustained under the law." 293 So. 2d at 45. The state's evidence would be as a matter of law "insufficient to warrant a conviction." Fla. R. Crim. P. 3.380.
>
> It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. *Spinkellink v. State,* 313 So. 2d 666, 670 (Fla.1975), *cert. denied*, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. *See Toole v. State*, 472 So. 2d 1174, 1176 (Fla.1985). Once that threshold burden is met, it becomes the jury's duty to determine whether

the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.

*State v. Law*, 559 So. 2d 187, 188-89 (Fla. 1989) (footnotes omitted).

The Court's analysis begins with the essential elements of the offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. Petitioner was charged with first degree murder, defined under Florida law as "[t]he unlawful killing of a human being . . . [w]hen perpetrated from a premeditated design to effect the death of the person killed or any human being." Fla. Stat. 782.04(1) (1996). "Premeditation is more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose to kill may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act. . . . Whether or not the evidence shows a premeditated design to commit a murder is a question of fact for the jury which may be established by circumstantial evidence." *Bell v. State*, 768 So. 2d 22 (Fla. 1st DCA 2000).

The theory of Petitioner's defense was that this was a murder committed in the heat of passion. The State adduced testimony from Petitioner's sister, Cynthia Stephens, that a few weeks before the murder, she and Petitioner had two conversations during which Petitioner expressed his frustration with "problems" confronting him. Ms. Stephens testified that the second conversation culminated as follows:

> He said, maybe – like, he said that he was – the same thing, that he was tired of it, and I asked him, I said, "Tired of what?" and he said, "I'm just tired of all this." You know, "I don't know where to go." He said, "Maybe I'll just kill myself and kill her."

Dkt. 29, Ex. 8, Vol. IV at Tr. 319. In a statement to Officer Scudder, Petitioner indicated that the altercation started in the kitchen (Dkt. 29, Ex. 8, Vol. III at Tr. 297). This statement,

together with the evidence at the scene, indicated that Petitioner chased the victim into the bedroom where she cowered in a corner between the bed and the wall as she tried to fend off the knife blows. *Id.* The evidence also indicated that Petitioner cut the telephone jack out of the wall in the dining area to prevent the victim from calling for help. *See* Dkt. 29, Ex. 8, Vol. IV at Tr. 334-336, 338-339, 348, 394, 399, 401-404; Vol. VI at Tr. 563). The State's position was that the number and location of stab wounds on the victim's body constituted compelling evidence of Petitioner's premeditated intent. Finally, evidence was adduced showing that Petitioner had moved around the house after the attack and waited approximately 10 hours before summoning help (Dkt. 29, Ex. 8, Vol. III at Tr. 247-48; Vol. IV at Tr. 360-362).  Viewing the evidence in the light most favorable to the State, a rational juror "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. It was for the jury to determine what evidence was to be believed, and it must be presumed the jury resolved evidentiary conflicts in favor of the State.

Applying the standards required by § 2254(d), as well as the holding in *Jackson,* the Court finds that Petitioner has not demonstrated that the adjudication of this claim resulted in a decision that is contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  This claim is, therefore, also without merit.

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.    The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2.    The **Clerk** shall enter judgment against Petitioner, terminate all pending motions,

and close this case.

**DONE** and **ORDERED** in Tampa, Florida on June 13, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
Counsel/Parties of Record
USCA

SA:jsh

F:\Docs\2002\02-cv-965.dismissal.frm